## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**HAROLD GEORGE JOHNSON,**

*Plaintiff,*

**v.**

          **Case No. 19-cv-3829-RCL**

**ANDREW M. SAUL,**

*Defendant.*

## MEMORANDUM OPINION

Plaintiff Harold George Johnson brings this action challenging a Social Security Administration determination that he is ineligible for disability insurance benefits or supplemental security income because he is not disabled under the Social Security Act, 42 U.S.C. § 401 *et seq.* Before the Court are plaintiff's Motion for Judgment of Reversal, ECF No. 17, and defendant Andrew M. Saul's Motion for Judgment of Affirmance, ECF No. 18. After considering the motions, the applicable legal standards, and the entire record, the Court will **GRANT IN PART** and **DENY IN PART** plaintiff's motion and **DENY** defendant's motion.

### I.  BACKGROUND

Through an adjudicatory process, the Social Security Administration provides benefits to individuals who cannot work because of a physical or mental disability. On October 3, 2016, plaintiff protectively filed an application with the Social Security Administration for disability insurance benefits and supplemental security income for an alleged disability that began on August 19, 2016. Soc. Sec. Admin. Op. 1, ECF No. 14-2. These claims were initially denied on December 8, 2016, and again upon reconsideration on April 28, 2017. *Id.* Plaintiff subsequently

filed a request for a hearing, which was held on October 2, 2018, in front of the Honorable Michael Krasnow, an Administrative Law Judge ("ALJ"). *Id.*

At the hearing, plaintiff appeared and testified in person. *Id.* At that time, plaintiff was thirty-six years old, had completed the eighth grade, and earned a GED. Tr. 42, 44, 65, ECF No. 14-2. He reported that he suffers from panic attacks and receives treatment for mental health issues because he sometimes does not "know how to control my feelings or emotions." Tr. 46, 63. Plaintiff has not worked for several years and pointed to his mental health as the reason he is unable to work. Tr. 62–63. Plaintiff last worked as a driver for a transportation company, Tr. 44, and had previously worked as a meat clerk in a supermarket. Tr. 47. Plaintiff testified that he lives alone and is able to make his own meals, such as sandwiches, and also that he cleans the house, shops for groceries, goes to church, and uses public transportation on his own. Tr. 42, 44, 59–61.

Mr. Quintin Boston, an impartial vocational expert, also testified at the hearing. Tr. 67. The ALJ gave Mr. Boston a hypothetical individual and asked him whether there would be any jobs that the individual could perform in the national economy. Tr. 69–70. The hypothetical individual could perform a full range of medium work, including "frequently climb[ing] ramps and stairs; occasionally climb[ing] ropes, ladders, and scaffolds; kneel[ing], crouch[ing], and crawl[ing]," but must "avoid concentrated exposure to hazards including dangerous machinery, unprotected heights, and parts." Tr. 70.  The individual was "further limited to simple, routine, repetitive tasks; occasional changes in the work setting; occasional judgement or decision making[;] [n]o production rate for pace of work, and occasional interaction with the general public, coworkers, and supervisors." *Id.* Mr. Boston testified that the individual could perform plaintiff's past work as a driver and meat clerk, and could also work in the national economy as a laundry laborer, store laborer, laundry classifier, document preparer, or in other similar jobs. Tr. 70–71. Plaintiff's

attorney then asked Mr. Boston whether the individual would still be able to perform the jobs Mr. Boston identified if the individual's ability to maintain a regular schedule were "markedly limited." Tr. 72. Mr. Boston acknowledged that an individual with such a limitation would not be able to perform any of the jobs he identified. Tr. 72, 75.

On February 12, 2019, the ALJ issued his decision denying plaintiff's application for disability insurance benefits and supplemental security income. Op. 2. The ALJ found that plaintiff had not engaged in substantial gainful activity since August 19, 2016, that he had the severe impairments of affective mood disorder, anxiety-related disorder, substance use disorder, and a patellar fracture in the left knee, and that those severe impairments did not equal or exceed the criteria of an impairment listed in 20 C.F.R. Part 404, subpart P, Appendix 1. Op. 3–4. The ALJ then considered plaintiff's residual functional capacity ("RFC") and found that plaintiff was not disabled because he could perform medium work, subject to the limitations of the hypothetical individual discussed at the hearing. Op. 6. After unsuccessfully seeking review by the agency's Appeals Council, plaintiff timely filed this suit under 42 U.S.C. § 405(g).

## II.    LEGAL STANDARD

The Court's review of the ALJ's decision is limited to deciding whether the ALJ correctly applied the relevant legal standards and whether substantial evidence supports the ALJ's findings. *Butler v. Barnhart*, 353 F.3d 992, 999 (D.C. Cir. 2004). The substantial evidence standard "requires more than a scintilla, but . . . less than a preponderance of the evidence," *id.* (internal quotation marks omitted), and can be satisfied by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks omitted).

To qualify for disability insurance benefits and supplemental security income under the Social Security Act, plaintiff must establish that he is "disabled." 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1). The Social Security Administration has established a five-step sequential evaluation process for assessing whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The first three steps involve, respectively, the ALJ considering whether the individual is currently engaged in "substantial gainful activity," whether the medical impairment is "severe," and whether the severe medical impairment meets one of the "listings" in the relevant subpart Appendix. §§ 404.1520(a)(4)(i)–(iii), 416.920(a)(4)(i)–(iii). If the severe medical impairment is not a listed impairment under the third step, the ALJ then assesses the individual's RFC before moving on to the fourth step. §§ 404.1520(a)(4), (e), 416.920(a)(4), (e). An individual's RFC is the most he can do despite his limitations and is assessed based on all the relevant evidence in the record. § 416.945(a)(1). If the ALJ finds that the individual can adjust to other work based on his age, education, and the RFC assessment, then he is not disabled under the Social Security Act. §§ 404.1520(h), 416.920(h).

## III.   DISCUSSION

Plaintiff makes four arguments challenging the ALJ's decision. Specifically, plaintiff claims that the ALJ failed to properly evaluate the criteria for establishing a severe impairment under 20 C.F.R. Part 404, subpart P, Appendix 1, did not give appropriate weight to the medical opinions of plaintiff's treating physician, did not give appropriate weight to the opinion of a consulting physician, and did not provide an adequate explanation to support his RFC findings regarding plaintiff's mental limitations. Pl.'s Mot. J. Reversal 7–27. The Court finds the last of these arguments convincing. It will thus remand the matter to the Social Security Administration

so that the ALJ can properly address plaintiff's moderate mental limitations in concentration, persistence, and pace with respect to plaintiff's RFC.

## A. The ALJ Properly Evaluated the Criteria for Establishing the Severity of Plaintiff's Listed Mental Impairments

Plaintiff argues that the ALJ failed to apply the correct criteria to determine whether his mental limitations meet either Listings 12.04 (Depressive, bipolar, and related disorders) or 12.06 (Anxiety and obsessive-compulsive disorders) of 20 C.F.R. Part 404, subpart P, Appendix 1. Pl.'s Mot. J. Reversal 7–11. More specifically, plaintiff states that the ALJ "failed to explain in any way how his findings connect to or apply these criteria or why he ignored the evidence of record that satisfy these requirements of Paragraph C." *Id.* at 9. This argument is unavailing.

Paragraph C of Listings 12.04 and 12.06 requires the ALJ to consider the following at step three of the evaluation:

> C. Your mental disorder in this listing category is "serious and persistent"; that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
>> 1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>>
>> 2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. §§ Pt. 404, Subpt. P, App. 1 at 12.04C, 12.06C. Contrary to plaintiff's contentions, the ALJ specifically addressed the Paragraph C criteria in his opinion:

> In this case, the evidence fails to establish the presence of the 'paragraph C' criteria. The claimant's impairments do not satisfy the 'paragraph C' criteria for this listing because *treatment records indicate that his symptoms respond positively to antipsychotic medications* (Exhibit B13F/49). Furthermore, *the record does not contain any prior administrative findings or medical expert evidence that would allow the undersigned to find that the* [plaintiff]*'s impairments medically equal the*

*severity contemplated under these listings.* Therefore, the claimant's impairments neither meet nor medically equal these listings.

Op. 2 (emphases added). It is true, as plaintiff points out, that the ALJ incorrectly understood a finding that medical treatment reduced plaintiff's mental disorder symptoms as evidence that plaintiff did *not* meet the listings. As the text of Paragraph C(1) makes clear, however, this is not the case.

Nevertheless, to have a "serious and persistent" mental disorder, plaintiff must meet the requirements set forth in C(1) *and* C(2), and the ALJ's finding that "the record does not contain *any* prior administrative findings or medical expert evidence that would allow the undersigned to find that the claimant's impairments medically equal the severity contemplated under these listings," Op. 2 (emphasis added), indicates that the ALJ found that plaintiff did not meet the marginal adjustment requirement of Paragraph C(2).

The ALJ's Paragraph B analysis further supports this finding.[1] There, the ALJ noted that plaintiff has only a "mild limitation" in adapting and managing himself because "he is able to use public transportation and shop in stores, which would require him to adjust to potentially stressful situation[s] such as crowds." Op. 5–6. This is "substantial evidence" that plaintiff has more than a "minimal capacity to adapt to changes in [his] environment or to demands that are not already part of [his] daily life." 12.04C(2), 12.06C(2). The ALJ did not need to repeat himself. *See Clark v.*

---

[1] Paragraph B of Listings 12.04 and 12.06 requires the ALJ to consider whether the plaintiff's mental disorders show:

Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):
    1. Understand, remember, or apply information (see 12.00E1).
    2. Interact with others (see 12.00E2).
    3. Concentrate, persist, or maintain pace (see 12.00E3).
    4. Adapt or manage oneself (see 12.00E4).

20 C.F.R. §§ Pt. 404, Subpt. P, App. 1 at 12.04B, 12.06B

*Astrue*, 826 F. Supp. 2d 13, 21 (D.D.C. 2011) (citing *Rivera v. Comm'r of Soc. Sec.*, 320 F. App'x 128, 130 (3d Cir. 2009)) (noting that "there is no requirement that an ALJ repeat [a] determination throughout each step of the sequential analysis"). Thus, the ALJ sufficiently explained why plaintiff's mental limitations did not meet the listing requirements of Paragraph C of Listings 12.04 and 12.06.

### B.  The ALJ Properly Credited the Medical Opinions of Dr. Broadnax

Plaintiff next argues that the ALJ "failed to articulate legitimate reasons" to reject the opinions of plaintiff's treating psychiatrist, Dr. Michelle Broadnax. Pl.'s Mot. J. Reversal 14. Plaintiff is correct that a treating physician's opinions "are entitled to 'controlling weight'" and are "binding on the fact-finder *unless contradicted by substantial evidence*." *Butler*, 353 F.3d at 1003 (emphasis added). When there is substantial evidence conflicting with the treating physician's opinions, and the ALJ "explain[s] his reasons for" rejecting the treating physician's opinions, however, the ALJ's findings to the contrary do not violate the treating physician rule. *Id.*

Here, plaintiff's argument is without merit because the ALJ chose to reject Dr. Broadnax's opinions based on conflicting substantial evidence in the record. In particular, the ALJ gave two reasons for affording Dr. Broadnax's opinions "little weight." Op. 11. First, Dr. Broadnax indicated that plaintiff had been disabled since 2008, despite engaging in substantial gainful activity after that date. *Id.* Second, she assessed plaintiff as having marked limitations in daily living, maintaining social functioning, and maintaining concentration and persistence, which was inconsistent with "mental status examinations that demonstrate [plaintiff] has 'no gross cognitive defects' and only mild impairments in concentration[]." *Id.*

Plaintiff interprets Dr. Broadnax's 2018 medical opinion as stating that she had been *treating* plaintiff since 2008, not that plaintiff had been *disabled* since then. Pl.'s Mot. J. Reversal

14–15. But the record is somewhat unclear on this point. On the one hand, the ALJ pointed to Dr. Broadnax's 2018 opinion that stated plaintiff's medical "[a]ssessment is from 12/2/2008 to present," Ex. B17F 1, ECF No. 14-12, as evidence that she was describing plaintiff as having been disabled that entire time. Yet, Dr. Broadnax's earlier opinions described plaintiff's disability as "temporary" and only lasting "from 2/2016–10/2016," and that plaintiff "has been followed at [Anchor Mental Health] since 2008." Exs. B5F 4, B6F 1, ECF No. 14-8; B16F 15, ECF No. 14-11.

The Court need not decide if Dr. Broadnax meant plaintiff has been disabled since 2008, however, because the Court agrees with the ALJ's second reason for giving Dr. Broadnax's opinions little weight—the fact that her opinions are inconsistent with substantial evidence in the record. Despite plaintiff's claims to the contrary, the ALJ cited specific mental health examinations that conflicted with Dr. Broadnax's opinions, including the opinion by Dr. May stating that plaintiff's concentration was only "mildly impaired," and a finding by Dr. Broadnax in her 2017 opinion that plaintiff had "No Gross Cognitive Deficits." Exs. B8F 4, B9F 3, ECF No. 14-8. Further, before discussing Dr. Broadnax's opinions, the ALJ spent the preceding paragraphs in the same section of his analysis explaining his finding that plaintiff has only mild to moderate mental limitations, and cited numerous examples in the record to justify this finding. *See* Op. 7–9; *Clark*, 826 F. Supp. 2d at 21. Thus, the ALJ sufficiently explained his reasons for giving little weight to Dr. Broadnax's opinions.[2]

---

[2] Plaintiff also argues that the ALJ erred because he did not "properly consider, weigh, or apply" to Dr. Broadnax's opinions the six factors an ALJ must evaluate when considering the weight to give any medical opinion. Pl.'s Mot. J. Reversal 20. The six factors include the examining relationship, treatment relationship, supportability, consistency, specialization, and other factors that support or contradict the medical opinion. 20 C.F.R. §§ 404.1527(c)(1)–(6). Plaintiff's argument fails because the ALJ properly considered these factors by noting the type and length of Dr. Broadnax's relationship with plaintiff, and also pointed to substantial evidence in the record that was inconsistent with her findings. The ALJ did not need to explicitly describe his conclusion as to each factor. *See, e.g.*, *McLaurin v. Colvin*, 121 F. Supp. 3d

## C. The ALJ Properly Evaluated the Medical Opinion of Dr. May in His RFC Determination

Plaintiff next claims that the ALJ erred by "fail[ing] to properly evaluate substantial evidence of [plaintiff's mental] impairments reported by . . . Dr. [Phoebe] May" and that the ALJ's RFC assessment lacked Dr. May's "critical evidence or any explanation as to why he chose to ignore it." Pl.'s Mot. J. Reversal 22, 23.[3] This argument also fails.

The ALJ explained that he afforded Dr. May's finding that plaintiff had marked limitations in his ability to perform complex tasks or simple tasks independently, maintain a regular work schedule, make appropriate decisions, relate adequately with others, and deal appropriately with stress "partial weight because, even though [Dr. May's opinion] is supported by a direct examination of the [plaintiff], it is not entirely consistent with the rest of the evidence." Op. 11. The ALJ did not end there, however, but once again cited specific substantial evidence in the record to support his decision. For example, the ALJ pointed to other mental status examinations showing that plaintiff is "cooperative, maintains an appropriate rapport with clinical examiners, has coherent speech[,] and a goal-oriented thought process," *id.*, and cited several record exhibits as support. Indeed, the cited mental status examinations indicate plaintiff's rapport is "appropriate" and his thought process and content is "Goal directed." Exs. B9F 2; B13F 6, ECF No. 14-10; B16F 8, ECF No. 14-11. Also, the ALJ pointed out that Dr. May's assessment is inconsistent with plaintiff's activities of daily living, such as using public transportation, shopping in stores, and maintaining a tidy living space, all of which "would require the claimant to perform simple tasks

---

134, 141 (D.D.C. 2015); *Little v. Colvin*, 997 F. Supp. 2d 45, 52 (D.D.C. 2013); *Grant v. Astrue*, 857 F. Supp. 2d 146, 154–55 (D.D.C. 2012).

[3] Plaintiff also states that the ALJ "failed to properly evaluate substantial evidence of [plaintiff's mental] impairments set out in Dr. Broadnax's" 2018 opinion. Pl.'s Mot. J. Reversal 22. This is a slightly reworded version of plaintiff's second argument, which the Court already addressed and rejected in Section III.B.

[independently] and adjust to potentially stressful situations like crowding." Op. 11; *see* Exs. B3E

4, ECF No. 14-6; B13F 4–5; Tr. 44, 59–60. Thus, the ALJ properly explained why he only partially

credited Dr. May's opinion in his RFC determination.

### D. The ALJ Did Not Adequately Incorporate Plaintiff's Moderate Limitations in Concentration, Task Persistence, or Pace in his RFC Determination

Finally, plaintiff argues that the ALJ's RFC assessment failed to adequately incorporate

plaintiff's limitations in concentration, task persistence, or pace ("CPP"). Pl.'s Mot. J. Reversal

24–27. The Court agrees. In his RFC determination, the ALJ found that plaintiff could do medium

work, but was "limited to simple, routine and repetitive tasks; occasional changes in the work

setting; a non-production rate pace of work; occasional judgment or decision-making; and

occasional interaction with co-workers, supervisors, and the general public." Op. 6. The ALJ noted

that plaintiff's mental limitations "can be adequately accommodated by limiting the [plaintiff] to

simple and routine tasks not [at] a production rate of pace." Op. 7. This RFC is insufficient,

however, because it does not fully address the ALJ's finding that plaintiff has a moderate limitation

in CPP. *See* Op. 5.

A moderate CPP limitation affects a plaintiff's "ability to sustain focused attention and

concentration sufficiently long to permit the timely and appropriate completion of tasks commonly

found in work settings." *Petty v. Colvin*, 204 F. Supp. 3d 196, 206 (D.D.C. 2016) (internal

quotation marks omitted). As numerous courts have noted, however, the problem with finding a

moderate CPP limitation by requiring "simple, routine, and repetitive tasks" is that such a

restriction, without more, does not actually address plaintiff's mental impairments because the

difficulty of a task does not necessarily say anything about his ability to concentrate on it. "Put

another way, someone with problems concentrating may not be able to complete a task consistently

over the course of a workday, no matter how simple it may be." *Martin v. Saul*, 950 F.3d 369, 374

(7th Cir. 2020); *see also Crump v. Saul*, 932 F.3d 567, 570 (7th Cir. 2019) ("[An] ALJ generally may not rely merely on catch-all terms like 'simple, repetitive tasks' because there is no basis to conclude that they account for problems of concentration, persistence or pace. . . . More to it, observing that a person can perform simple and repetitive tasks says nothing about whether the individual can do so on a sustained basis.") (internal citations omitted); *Mascio v. Colvin*, 780 F.3d 632, 638 (4th Cir. 2015) ("[A]n ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work."); *Petty*, 204 F. Supp. 3d at 206 n.3 (collecting cases). Given that "many of the[] mental status examinations . . . indicate that [plaintiff] has difficulties in concentration," Op. 5, the ALJ erred by not providing a more complete explanation regarding plaintiff's ability to complete tasks during a full workday.[4]

To be sure, there is no need for a remand if the error is harmless. And in this case, the error would be harmless if "(1) 'medical evidence demonstrates that a claimant can engage in simple, routine tasks or unskilled work despite limitations in concentration, persistence, and pace,' *and the challenged hypothetical* [that the RFC is based on] *is limited 'to include only unskilled work'*; or (2) the hypothetical 'otherwise implicitly account[ed] for a claimant's limitations in concentration, persistence, and pace[.]'" *Petty*, 204 F. Supp. 3d at 206 (quoting *McIntyre v. Colvin*, 758 F.3d 146, 152 (2d Cir. 2014)) (emphasis added). But the Court holds the error was not harmless.

The error was not harmless under the first factor because, when the ALJ gave Mr. Boston the hypothetical individual at the hearing, the ALJ did not restrict the individual to unskilled work.

---

[4] On remand, the ALJ should consider, for example, whether segmented work periods and break lengths would address plaintiff's CPP limitations. *See, e.g.*, *Brown v. Saul*, Civ. Action No. 18-1294-RCL, 2020 WL 5653696, at *3–4 (D.D.C. Sept. 23, 2020) (holding that the ALJ's limitation of "simple tasks in two-hour increments with fifteen-minute breaks in between" was "specific guidance on how plaintiff can manage her concentration, task persistence, and pace limitations in the workplace").

11

*See* Tr. 70. The description of the hypothetical individual at the hearing ended up being identical to plaintiff's RFC, which also does not contain a restriction for plaintiff to perform unskilled work. *See* Op. 6. The first factor therefore does not apply.

As for the second factor, the hypothetical did not implicitly account for plaintiff's CPP limitations. The phrase "simple, routine, and repetitive tasks" is problematic for the reasons discussed above. And the ALJ's inclusion of the phrase "non-production rate pace of work," while helpful, does not fully account for plaintiff's moderate CPP limitations either.[5] Once again, not having to meet production goals or quotas does not explain how long plaintiff can stay on task in a given eight-hour day for five days a week (or an equivalent work schedule). *See* SSR 96-8p, 1996 WL 374184, at *1 (S.S.A. July 2, 1996) ("RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."); *Petty*, 204 F. Supp. 3d at 207 (quoting *Ramirez v. Barnhart*, 372 F.3d 546, 554 (3d Cir. 2004)) ("Many employers require a certain output level from their employees over a given amount of time, and an individual with deficiencies in [concentration, persistence, or] pace might be able to perform simple tasks, but not over an extended period of time.") (alterations in original). Therefore, the ALJ's error in failing to adequately include plaintiff's moderate CPP limitations in his RFC assessment was not harmless and requires a remand.

---

[5] Plaintiff objects to the phrase "non-production rate pace of work" in the ALJ's RFC determination, arguing that this limitation is too vague to determine whether it accounts for his moderate CPP limitations. Pl.'s Mot. J. Reversal 26–27. While the Court does not believe the ALJ's RFC accurately captured plaintiff's CPP limitations, it is not because this phrase is unclear. The ALJ phrased it as "[n]o production rate for pace of work" during the hearing, Tr. 70, plainly indicating that plaintiff is precluded from work that includes production goals. While it would have been helpful for the ALJ to give concrete examples of such jobs, such as assembly line work, *see, e.g.*, *Ward v. Berryhill*, 246 F. Supp. 3d 202, 205 (D.D.C. 2017), the Court rejects plaintiff's argument that the vagueness of the phrase alone requires remand.

\* \* \* \* \*

In sum, the ALJ committed reversible error by failing to fully address plaintiff's mental limitations. Thus, the Court will vacate the ALJ's decision and remand the case so that the Social Security Administration can properly address plaintiff's moderate mental limitations in concentration, persistence, and pace with respect to plaintiff's RFC.

## IV.   CONCLUSION

For the reasons set forth above, the Court will **GRANT IN PART** and **DENY IN PART** plaintiff Harold George Johnson's Motion for Judgment of Reversal, ECF No. 17, and **DENY** defendant Andrew M. Saul's Motion for Judgment of Affirmance, ECF No. 18. Though the Court will grant plaintiff's request for remand, it will not direct the Social Security Administration to enter an award of benefits to plaintiff. *See* ECF No. 17. Instead, it will vacate the decision of the Commissioner of Social Security denying plaintiff's claims for disability and supplemental security income benefits and remand for reconsideration consistent with this Memorandum Opinion.

A separate Order and Judgment accompany this Memorandum Opinion.

Date: February 5, 2021

Royce C. Lamberth

Hon. Royce C. Lamberth
United States District Judge